```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
UNITED STATES OF AMERICA,

        -against-                    MEMORANDUM & ORDER
                                     21-CR-0328-1(JS)
ABERRA GRANT,

             Defendant.
---------------------------------X
APPEARANCES
For United States:   Andrew Patrick Wenzel, Esq.
                     DOJ-USAO, Eastern District of New York
                     271 Cadman Plaza East
                     Brooklyn, NY 11201

For Defendant:       Evan Sugar, Esq.
                     Federal Defenders of New York, Inc.
                     770 Federal Plaza
                     Central Islip, NY 11722

                     S. Isaac Wheeler, Esq.
                     Federal Defenders of New York, Inc.
                     52 Duane Street, 10th Floor
                     New York, NY 10007
```

SEYBERT, District Judge:

Aberra Grant ("Defendant") is charged with illegally reentering the United States in violation of 8 U.S.C. § 1326(a) and (b)(1). (See Indictment, ECF No. 9.) Presently before the Court is Defendant's motion to dismiss the Indictment. (Mot., ECF No. 17; Support Memo, ECF No. 18.) For the reasons that follow, Defendant's motion is GRANTED.

## BACKGROUND

The parties do not dispute the relevant facts. Defendant was born in Jamaica in 1981 and immigrated to the United States as

a lawful permanent resident in 1987. (See Grant Aff. at ¶¶ 2-3, Def. Ex. A, attached to Wheeler Decl., ECF No. 18-1.) When Defendant first immigrated to the United States, he lived in New Jersey with his parents and brothers. (Id. ¶ 4.) Several years later, Defendant's father left his family and returned to Jamaica. (Id.) Defendant eventually moved to Long Island, where he attended high school. (Id. ¶ 5.) "[L]ooking back, [Defendant] believe[s] he suffered from serious depression in [his] high school years." (Id. ¶ 6.) His mental health issues "led to drug use, which led to convictions that caused [his] immigration problems." (Id.)

In March 2006, Defendant was arrested on drug charges. (A-File at 112, Def. Ex. C, attached to Wheeler Decl.) He was ultimately convicted in June 2010 on one count of criminal possession of a controlled substance in the fifth degree and one count of criminal possession of a controlled substance in the seventh degree, and sentenced to 18 months imprisonment (Id. at 99.) Defendant's next arrest was in December 2009, which was also related to drug charges. (Id. at 190.) He was convicted in May 2011 for criminal possession of a controlled substance in the third degree, and sentenced to one year in prison. (Id.)

While Defendant was in custody at the Nassau County Correctional Center ("NCCC"), on June 23, 2010, United States Immigration and Customs Enforcement ("ICE") determined Defendant was deportable and lodged a Form I-247 "Immigration Detainer –

2

Notice of Action." (See Wheeler Decl. ¶ 10; Def. Ex. E, at 532.) A second detainer was lodged on July 21, 2010 when Defendant was transferred from NCCC to Ulster County Jail. (See Wheeler Decl. ¶ 10; ICE Documentation at 532, Def. Ex. E, attached to Wheeler Decl.) ICE then prepared a Notice to Appear ("NTA") on July 21, 2010, charging Defendant as a removable lawful permanent resident on the basis of the two June 2010 convictions. (See ICE Documentation at 192-95.) The NTA alleged Defendant was removable under Section 237(a)(2)(B)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(B)(i), because he was "convicted of a violation of . . . any law or regulation of a State . . . relating to a controlled substance (as defined in Section 102 of the Controlled Substances Act, 21 U.S.C. [§] 802), other than a single offense involving possession for one's own use of 20 grams or less of marijuana." (Id. at 194.) Almost one year later, after Defendant's state sentence was completed, he was transferred to a detention facility in Batavia, New York. (Support Memo at 5.) The NTA was served on Defendant on July 19, 2011 and filed with the Executive Office for Immigration Review ("EOIR") on July 20, 2011, thereby initiating a removal proceeding. (Id.; ICE Documentation at 192-94.)

Defendant retained Howard Brill, Esq. ("Brill") to defend him in the removal proceeding. (Grant Aff. ¶ 8.) Brill advised Defendant that Defendant's prior convictions rendered him

3

deportable, but that he could seek a "cancellation of removal." (Id. ¶ 9.) Brill "told [Defendant] cancellation was [his] only chance" and "never discussed any possibility of arguing that [Defendant] was not deportable for [the] drug convictions or that the [immigration] judge did not have power to order [him] removed." (Id. ¶ 10.)

Brill represented Defendant at two preliminary "master calendar hearings" in August 2011. (Support Memo at 5.) At the second hearing on August 16, 2011, Brill entered pleadings in response to the NTA, "admitted all of the NTA's factual allegations," and conceded that Defendant's June 2010 convictions rendered him removable under INA § 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i). (Id. at 5-6.) Brill also submitted an application for cancellation of removal with supporting documentation. (See id. at 6.) At a third master calendar hearing on November 22, 2011, the immigration judge ("IJ") granted Defendant's application for cancellation of removal, despite characterizing Defendant's case as "difficult," "challenging," and "very close." (Id. at 6-7; Opp'n at 2-3.) The IJ told Defendant that cancellation was a "one-time remedy" and that Defendant needed to get his life on track "because he would not get another chance." (Support Memo at 7; Opp'n at 3.) Both Defendant and the Government waived appeal of the IJ's decision. (Support Memo at 7; Opp'n at 3.)

4

Defendant did not heed the IJ's warning. On March 11, 2014, Defendant was arrested for driving while intoxicated. (Record of Deportable/Inadmissible Alien at 3, Def. Ex. M, attached to Wheeler Decl.) He was convicted on March 18, 2014 and sentenced "to a conditional discharge." (Id.) Defendant was arrested again on August 7, 2016 for driving while intoxicated and for criminal possession of a controlled substance in the fourth degree. (Id.) On September 12, 2018, Defendant was convicted of these two felonies and sentenced to a three-year term of imprisonment. (Id.)

While Defendant was in custody, ICE filed another NTA in January 2019, alleging Defendant was removable under INA § 237(a)(2)(B)(i) based on the September 2018 drug possession conviction, which involved cocaine. (NTA at 315, Def. Ex. J, attached to Wheeler Decl.) Defendant retained Matthew Kolken, Esq. ("Kolken") to represent him during this removal proceeding. (Grant Aff. ¶ 16.) Kolken advised Defendant that he was removable on the basis of the 2018 cocaine conviction and did not advise Defendant that there were any arguments to make against deportation. (Id. ¶ 17; see Support Memo at 8-9.) Kolken submitted written pleadings in response to the NTA, in which he admitted the NTA's allegations and conceded removability as charged. (Support Memo at 9.)

On March 11, 2019, Defendant appeared before an IJ for another master calendar hearing. (Support Memo at 9; Opp'n at 4.)

5

During the hearing, Kolken recounted legal advice he gave to Defendant, "including future bars on [Defendant's] re-admission stemming from a removal order, the nature of the convictions . . . that have been alleged," and that Defendant "would require a nonimmigrant waiver of inadmissibility" "should he wish to return to the United States in the future." (Support Memo at 9 (citing Master Calendar Hr'g Recording ("MC Hr'g Recording") at 2:40-2:57, Def. Ex. H, attached to Wheeler Decl.).) Kolken also stated Defendant had no fear of returning to Jamaica and that Defendant was ineligible for cancelation of removal. (Id. (citing MC Hr'g Recording at 3:10-3:23).) Kolken then orally admitted the NTA's allegations, conceded Defendant's removability, and told the IJ that Defendant sought no relief from removal. (Id. (citing MC Hr'g Recording at 3:24-3:35, 4:30).) Thereafter, the IJ queried whether Defendant was seeking "even the minimum relief of voluntary departure." (Id. (quoting MC Hr'g Recording at 4:33).) Kolken asked Defendant if he could afford a plane ticket and Defendant said yes; however, after the IJ suggested a voluntary departure may take longer than removal, Defendant agreed to accept an order of removal. (Id. at 10-11 (quoting MC Hr'g Recording at 4:35-5:26); see also Grant Aff. ¶ 19 ("At my hearing, Mr. Kolken asked me if I could afford my own plane ticket to go back to Jamaica. I told him yes. But when the judge said doing it that way would mean more time and another hearing, I did not understand

6

what the point would be. Based on what my lawyers had already told me, I believed that I had to go back.").) Aside from expeditiousness, Defendant was not advised as to the differences between removal and voluntary departure. (Grant Aff. ¶ 19.) The IJ then ordered removal and Kolken waived appeal of the order. (Support Memo at 11 (citing MC Hr'g Recording at 7:02).) Defendant was removed to Jamaica seventeen days later on March 28, 2019. (Record of Deportable/Inadmissible Alien at 3.)

On April 6, 2021, Defendant was discovered in Suffolk County by members of the Suffolk County Police Department. (Id.) After being charged with miscellaneous motor vehicle infractions, criminal possession of a forged instrument, and criminal impersonation, on May 17, 2021, Defendant was convicted of criminal impersonation in the second degree. (Id.)

On June 16, 2021, the grand jury returned the Indictment charging Defendant with illegal reentry. Defendant filed the instant motion on April 1, 2022 seeking dismissal of the Indictment on the basis that the removal order was fundamentally unfair. (Support Memo at 1.) The Government opposed and Defendant submitted a reply. (Opp'n, ECF No. 20; Reply, ECF No. 21.)

## DISCUSSION

### I. Legal Standards

"The dismissal of an indictment is an 'extraordinary remedy' reserved only for extremely limited circumstances

7

implicating fundamental rights." United States v. De La Pava, 268 F.3d 157, 165 (2d Cir. 2001)(citation omitted); see also United States v. Sammy, 763 F. App'x 45, 46 (2d Cir. Feb. 27, 2019) (quoting De La Pava). "For the Government to prove a defendant guilty of illegal reentry after deportation, it must prove that the defendant has previously been deported, among other elements." United States v. Espinoza, 442 F. Supp. 3d 596, 603 (S.D.N.Y. 2020) (citing 8 U.S.C. § 1326(a)(1)-(2)). However, "an illegal reentry prosecution cannot rest upon a prior deportation order that was obtained in violation of the noncitizen's rights and without a meaningful opportunity for redress or judicial review." Id. (citing United States v. Mendoza-Lopez, 481 U.S. 828, 839 (1987)). Rather, "a collateral challenge to the use of a deportation proceeding as an element of a criminal offense must be permitted where the deportation proceeding effectively eliminates the right of the alien to obtain judicial review." Mendoza-Lopez, 481 U.S. at 839; see also id. at 837-38 ("[W]here a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative proceeding." (emphasis in original)).

Pursuant to 8 U.S.C. § 1326(d), a non-citizen charged with illegal reentry may attack the validity of the underlying removal order where: "(1) the defendant has exhausted the available

8

administrative remedies; (2) the removal proceedings 'deprived the alien of the opportunity for judicial review'; and (3) 'the entry of the order was fundamentally unfair.'" United States v. Young, No. 22-CR-0067, 2023 WL 4054527, at *4 (E.D.N.Y. June 16, 2023) (quoting 8 U.S.C. § 1326(d)).  All three of these requirements set forth in Section 1326(d) must be met.  Id. (citing United States v. Palomar-Santiago, 141 S. Ct. 1615, 1620-21 (2021)).  However, Second Circuit precedent dictates that "[a] failure to exhaust administrative remedies bars collateral review of a deportation proceeding under Section 1326(d)(1) . . . only where an alien's waiver of administrative review was knowing and intelligent." United States v. Holmes, No. 21-CR-0147, 2022 WL 1036631, at *5 (E.D.N.Y. Apr. 6, 2022) (quoting United States v. Calderon, 391 F.3d 370, 374-75 (2d Cir. 2004)) (second alteration in original).

II. Analysis

Here, Defendant collaterally attacks his underlying removal order.  Since the Court's analysis of the first two elements of Section 1326(d) is informed by its analysis of the third, the Court begins its inquiry by determining whether Defendant's removal order was fundamentally unfair.

A. Fundamental Unfairness

To establish fundamental unfairness, "a defendant 'must show both a fundamental procedural error and prejudice resulting from that error.'"  Espinoza, 442 F. Supp. 3d at 603 (quoting

9

United States v. Fernandez-Antonia, 278 F.3d 150, 159 (2d Cir. 2002); see also United States v. Daley, 702 F.3d 96, 101 (2d Cir. 2012) ("Fundamental unfairness arises when a 'fundamental procedural error' is coupled with 'prejudice resulting from that error.'" (quoting United States v. Copeland, 376 F.3d 61, 70 (2d Cir. 2004))). "Prejudice is shown where defects in the deportation proceedings may well have resulted in a deportation that would not otherwise have occurred." Copeland, 376 F.3d at 73 (quotations omitted). "The alien bears the burden of showing that entry of the removal order was fundamentally unfair." Daley, 702 F.3d at 100.

Generally, Defendant argues the 2019 removal proceeding was fundamentally unfair because it was erroneous for Kolken to concede, and for the IJ to conclude, that his 2018 conviction for possessing cocaine rendered him removable. As set forth above, Defendant was found removable under 8 U.S.C. § 1227(a)(2)(B)(i), which deems deportable "[a]ny alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State . . . relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana." The predicate state conviction for Defendant's removability under 8 U.S.C. § 1227(a)(2)(B)(i) was his 2018 conviction of New York Penal Law § 220.09(1), criminal

10

possession of a controlled substance in the fourth degree. A person is guilty of criminal possession of a controlled substance in the fourth degree under New York Penal Law § 220.09(1) where he knowingly and unlawfully possesses "one or more preparations, compounds, mixtures or substances containing a narcotic drug . . . of an aggregate weight of one-eighth ounce or more."

To determine whether a state conviction qualifies as a controlled substance-related offense to trigger removal, the Second Circuit requires courts to "identify the minimum criminal conduct under [the state] statute by looking only to the statutory definitions – i.e., the elements – of the offense, and not to the particular underlying facts." Jack v. Barr, 966 F.3d 95, 97 (2d Cir. 2020) (quoting Hylton v. Sessions, 897 F.3d 57, 60 (2d Cir. 2018)). In so doing, the Court must employ a "categorical approach" and "compare the state definition at the time of the offense to the federal definition in effect at the time of the challenged removal order." United States v. Young, No. 22-CR-67 (JMA), 2023 WL 4054527, at *6 (E.D.N.Y. June 16, 2023) (citing Doe v. Sessions, 886 F.3d 203, 208 (2d Cir. 2018)). "An element of a state offense categorically matches its federal counterpart if the state element is 'the same as, or narrower than' the federal element." United States v. Townsend, 897 F.3d 66, 74 (2d Cir. 2018) (quoting Descamps v. United States, 570 U.S. 254, 257 (2013)). Regarding controlled substances, "the state law must

11

criminalize only those substances that are criminalized under federal law." Id. Defendant principally argues the state and federal definitions of controlled substances, particularly that of cocaine, do not categorically align for purposes of removability because New York law has a more sweeping definition of "cocaine" than federal law. (See Support Memo at 13-20.)  The Court agrees.

At the time of Defendant's controlled substances conviction in 2018, New York law defined "cocaine" and related substances as:

> Coca leaves and any salt, compound, derivative, or preparation of coca leaves, and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances including cocaine and ecgonine, their salts, isomers, and salts of isomers, except that the substances shall not include decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine.

N.Y. PUB. HEALTH L. § 3306, Schedule II(b)(4).  The federal Controlled Substances Act defined "cocaine" as:

> Coca leaves . . . and any salt, compound, derivative or preparation of coca leaves (including cocaine . . . and ecgonine . . . and their salts, isomers, derivatives and salts of isomers and derivatives), and any salt, compound, derivative, or preparation thereof which is chemically equivalent or identical with any of these substances, except that the substances shall not include decocainized coca leaves or extraction of coca leaves, which extractions do not contain cocaine or ecgonine . . . .

12

21 C.F.R. § 1308.12(b)(4). Focusing on "isomers," which are "[c]hemical compounds that have the same composition but differ in the chemical arrangement of their constituents," see Merck Eprova AG v. Gnosis S.p.A., 760 F.3d 247, 252 (2d Cir. 2014), the federal Controlled Substances Act includes only the "optical or geometric isomers" of cocaine, see 8 C.F.R. § 1300.01(b). In contrast, the plain text of New York law "does not limit the type of isomers that fall within its definition of cocaine." United States v. Gutierrez-Campos, No. 21-CR-0040, 2022 WL 281582, at *13 (S.D.N.Y. Jan. 31, 2022).

Numerous courts within the Second Circuit have "uniformly found . . . a categorical mismatch between the New York state and federal definitions of 'cocaine,' such that New York state convictions relating to 'narcotic drugs' do not constitute removable offenses under federal immigration law." Young, 2023 WL 4054527, at *6 (citing Gutierrez-Campos, 2022 WL 281582, at *12-16); see also United States v. Contreras, No. 22-CR-0129, 2023 WL 3569274, at *13-14 (S.D.N.Y. May 17, 2023) (finding New York's controlled substances schedule regarding cocaine "categorically narrower than its federal counterpart"); Gutierrez-Campos, 2022 WL 281582, at *14 ("[A] plain textual reading of the relevant federal regulations compels the conclusion that New York's definition of cocaine, without limitation to particular types of isomers, is categorically broader than the federal definition. As such, the

13

New York statute criminalizes conduct — specifically conduct involving cocaine isomers other than optical or geometric isomers — that the federal statute does not. Other district courts in this Circuit have reached the same conclusion."); Holmes, 2022 WL 1036631, at *8 ("In contrast, the CSA limits 'isomer,' as used in the definition of cocaine, to 'any optical or geometric isomer.' 21 C.F.R. § 1300.01(b). Thus, whereas the CSA covers only optical and geometric cocaine isomers, the New York statute covers non-geometric, non-optical cocaine isomers not controlled by federal law (e.g., constitutional and positional isomers). On its face then, the New York statute is categorically broader than the federal definition."); United States v. Fernandez-Taveras, 511 F. Supp. 3d 367, 373-74 (E.D.N.Y. 2021) ("[T]he federal scheme excludes positional isomers from its definition of cocaine but includes them in its definition of hallucinogens. The New York Legislature made a different policy choice to define cocaine as broadly as possible, including all isomers. The Legislature implemented that policy for two reasons: (1) to ease the financial burden on police laboratories that would need to purchase expensive equipment to differentiate between different isomers of cocaine; and (2) to avoid risk that any legalized form of cocaine might pose to the public. As a result of the difference in the definitions of cocaine under New York law and federal law, possession of certain cocaine isomers is illegal under the New

14

York statute but legal under the [Controlled Substances Act]." (citation omitted)).

Despite the plain text of the New York law, the Government advances several arguments based on various theories of statutory interpretation to demonstrate that the state and federal definitions of "cocaine" are co-extensive. (See Opp'n at 10-22.) However, each of these arguments were raised by the Government before other district courts within the Second Circuit that have addressed the issue presented here, were considered, and rejected. See, e.g., Holmes, 2022 WL 1036631, at *9-11; Gutierrez-Campos, 2022 WL 281582, at *14-16; Fernandez-Taveras, 511 F. Supp. 3d at 373-74. The Court adopts the thorough and comprehensive reasoning presented in each of these three decisions, all of which are consistent with the other recent cases cited in the immediately preceding paragraph, and compel the Court to reject the Government's theories of interpretation.

By utilizing the categorical approach, the Court concludes that Defendant's 2018 conviction for possession of cocaine could not have properly served as the basis for his removal. Consequently, Defendant's removal proceedings were marred by a fundamental procedural error.

2. Prejudice

Defendant contends he was prejudiced by the fundamental procedural error that riddled his removal hearing because, if his

15

attorney did not concede removability and instead challenged removability, the IJ would not have ordered removal. (See Support Memo at 20.) It is well-established that "a deportation 'based on a state conviction that does not meet the federal standard for deportability is fundamentally unfair." Young, 2023 WL 4054527, at *7 (quoting Fernandez-Taveras, 511 F. Supp. 3d at 372). In light of the Court's finding that Defendant's removal was obtained based upon a misapplication of the categorical approach by both Kolken and the IJ, Defendant would not have been deemed removable, and he was prejudiced as a result thereof.

Accordingly, Defendant has met his burden to demonstrate that the removal proceedings were fundamentally unfair.

B. Administrative Exhaustion

Next, the Court considers whether Defendant has satisfied the administrative exhaustion requirement of 8 U.S.C. § 1326(d). Here, Defendant, through Kolken, waived his right to appeal the removal order and consequently, did not exhaust his administrative remedies. However, as set forth above, this exhaustion requirement may be excused where "an alien's failure to exhaust results from an invalid waiver of the right to an administrative appeal." United States v. Guzman, No. 19-CR-0435, 2022 WL 17068800, at *5 (S.D.N.Y. Nov. 17, 2022) (quoting United States v. Sosa, 387 F.3d 131, 136 (2d Cir. 2004)). "The finding

16

of knowing and intelligent waiver is inevitably a fact-specific inquiry." Ali v. Mukasey, 525 F.3d 171, 174 (2d Cir. 2008).

Defendant submits his waiver was not knowing and intelligent because Kolken advised him that his 2018 conviction rendered him deportable without relief, and that Kolken did not discuss "anything about an appeal or asking a federal court to review [the] deportation order" with him. (Support Memo at 22; Grant Aff. ¶¶ 17-19.) In opposition, the Government argues that Defendant's waiver was knowing and intelligent based upon Defendant's desire to conclude the removal proceeding and expedite his return to Jamaica. (Opp'n at 24.) This, however, ignores Defendant's lack of understanding of his right to appeal the removal order and the effect of a waiver, and is further indicia that Defendant's waiver was not knowing and intelligent. See Holmes, 2022 WL 1036631, at *13.

Accordingly, Defendant is excused from complying with Section 1326(d)(1)'s administrative exhaustion requirement.

C. Opportunity for Judicial Review

Last, the Court must consider that "the deportation proceedings at which the [removal] order was issued improperly deprived [him] of the opportunity for judicial review." 8 U.S.C. § 1326(d)(2). The Government concedes that the "seventeen days between the issuance of the removal order" did not afford Defendant "a reasonable opportunity to seek judicial review of the order, as

17

required." (Opp'n at 22 n.12.)  The Court agrees.  See Holmes, 2022 WL 1036631, at *13 (finding defendant was deprived of opportunity of judicial review where there were thirty-five days between the issuance of the removal order and removal).

Accordingly, the Court finds that Defendant has satisfied all three requirements of Section 1326(d). Consequently, the removal order that supports the single-count Indictment is insufficient and must be dismissed.

## CONCLUSION

For the stated reasons, **IT IS HEREBY ORDERED that** Defendant's motion to dismiss the Indictment is GRANTED.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: September 5, 2023
       Central Islip, New York

18